## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHARLES WILSON,    )
          )
    Plaintiff,   )
          )
VS.         )  Case No. 05-1154-DWB
          )
COMFORT SYSTEMS, a division of )
WALDINGER CORPORATION, )
          )
    Defendant.  )
_____ )

## <u>ORDER</u>

Before the Court is the Motion for Summary Judgment (Doc. 63) and

Memorandum in Support (Doc. 64) filed by Defendant Comfort Systems, a

division of Waldinger Corporation (hereinafter "Defendant").  Plaintiff Charles

Wilson (hereinafter "Plaintiff") was employed by Defendant as a service technician

from March 2003 until his employment was terminated on or about January 19,

2004.  Plaintiff, appearing *pro se*, brings a claim against Defendant for

discriminatory termination under the Americans With Disabilities Act ("ADA"),

42 U.S.C. §12101, *et seq*.  (*See generally* Doc. 1.)  Plaintiff, who received Social

Security disability payments throughout the course of his employment with

Defendant, claims his "history of knee problems since 1996" constitutes a

disability.  (*Id*. at pg. ¶5(f).)

Defendant contends that it is entitled to summary judgment because 1) Plaintiff does not suffer from a "disability" as that term is defined by the ADA; 2) Plaintiff is not a "qualified individual" as that term is defined by the ADA; and 3) Defendant was not aware of Plaintiff's alleged disability and, therefore, did not terminate Plaintiff's employment because of the alleged disability.

In his response, Plaintiff argues that summary judgment is inappropriate because 1) his knee condition was recognized by the Social Security Administration ("SSA") as a disability; 2) he had a "record" of being disabled and/or Defendant "had to know" that he was disabled because of correspondence from the SSA to Defendant; and 3) Defendant hired two other service technicians within weeks of terminating his employment.

After a thorough review of the parties' briefing, the case law cited therein, and the exhibits submitted, the Court is prepared to rule.  For the reasons discussed below, the Court is compelled to GRANT Defendant's Motion for Summary Judgment.

## UNCONTROVERTED FACTS

Plaintiff applied for SSA disability payments in 1997, some six years before his employment with Defendant.  (Doc. 64 at ¶ 13, Exh. D-1.[1])  In his benefits

---

[1]  Exhibit D to Defendant's memorandum (Doc. 64) was filed with the Court under seal on June 30, 2006, pursuant to the Court's Order (Doc. 62) granting Defendant's Motion

application, Plaintiff stated that he "became unable to work because of [his] disabling condition on June 1, 1997." (*Id.*)  In a Disability Report provided to the SSA in November 1997, Plaintiff responded that his disabling condition was that his "left and right knees are no good." (*Id.*, Exh. D-2.)  In that document, he indicated he had not been able to perform his former job duties since October 1996 and had to stop working on July 25, 1997.  (*Id.*)  He also wrote that he could not bend, squat, climb ladders, walk "very far," sit for long periods, or "carry weight." (*Id.* at ¶ 14, Exh. D-2.)

Plaintiff submitted a Report of Continuing Disability Interview to the SSA on April 7, 1999, listing his disabling conditions as "degenerative arthritis of knees, chrondomalacia;" he also indicated that he "need[ed] total knee replacements" in both knees.  (*Id.*, Exh. D-3.)  In that document, Plaintiff stated that his condition had not improved but, in fact, he believed it had worsened.  (*Id.* at ¶ 15, Exh. D-3.)  On a February 11, 2002, Disability Update Report, Plaintiff indicated that his doctor told him he could not work and that his health condition was unchanged since February, 2002.  (*Id.* at ¶ 16, Exh. D-4.)  He also indicated that he had "surgery on knees" in December, 2001.  (*Id.*, Exh. D-4.)

Plaintiff began his employment with Defendant on March 24, 2003, while

_____

to File Exhibit Under Seal (Doc. 61).

still receiving disability benefits.  (*Id*. at ¶¶ 2, 12, 26.)  Defendant, which is located in Wichita, Kansas, "installs and services heating, air conditioning, and plumbing for residential and commercial customers in Wichita and the surrounding cities." (*Id*. at ¶ 1.)  Defendant employed Plaintiff as a service technician to service residential and commercial air conditioners and furnaces.  (*Id*. at ¶ 2.)  In this position, Plaintiff was required to be able to perform the following duties:  bend, squat, kneel, sit, and/or walk for long periods of time to evaluate heating and air conditioning equipment; push a dolly to transport equipment; and climb stairs and/or ladders to access equipment; and lift up to approximately 100 pounds.  (*Id*., Exh. A, ¶ 3.)

The SSA considered Plaintiff's employment with Defendant to be "trial employment" to determine if he could perform substantial work for substantial wages.  (*Id*. at ¶ 19.)  Plaintiff continued to receive disability benefits during this time.  (*Id*.)  He did not, however, inform Defendant or its representatives of the benefits or the "trial employment."  (*Id*.)  To the contrary, he specifically withheld this information from Defendant because he believed "if you tell somebody you're disabled, nine times out of ten you're not going to get a job."  (*Id*., at ¶ 20, Exh. C, pg. 16.)

On May 5, 2003, Defendant transferred Plaintiff to its branch in Coffeyville,

4

Kansas.  (*Id.* at ¶ 4.)  He returned to Defendant's Wichita branch on May 19, 2003, where he continued to work until his termination in January 2004.  (*Id.* at ¶ 5.)  Plaintiff's manager in Wichita was Larry Dunn ("Dunn").  (*Id.* at ¶ 2.)

Defendant received correspondence from the Social Security Administration ("SSA") on December 18, 2003.  The SSA was attempting to determine if Plaintiff's employment with Defendant was subsidized or considered an unsuccessful work attempt under the agency's guidelines.  (*Id.* at ¶ 6; Doc. 66, Exh. B.)  The correspondence enclosed a "Work Activity Questionnaire" for Defendant to complete and return to the SSA, and stated that the information provided would help determine whether Plaintiff "can be entitled to Social Security benefits, in spite of his/her work."  (*Id.*)  When asked in the questionnaire if Plaintiff performed his work "under special conditions such as with extra help/supervision, fewer/easier duties, frequent rest periods, or lower production," Dunn answered in the negative.  (Doc. 64 at ¶ 6; Doc. 66, Exh. B.)  Dunn also answered that Plaintiff's work was satisfactory.  (*Id.*)  At the time the questionnaire was completed, Dunn had no knowledge of Plaintiff's "knee problems" or alleged disability.  (Doc. 64 at ¶ 6, Doc. 66 at ¶ 2.)  There was no reference in the documents to any disability or medical condition from which Plaintiff suffered. (Doc. 66, Exh. B.)

Plaintiff was hospitalized twice during the summer of 2003, once for dehydration and once for pancreatitis.  (Doc. 64 at ¶ 21, Exh. C, pg. 31-32.) Neither hospitalization was related to Plaintiff's knees.  (*Id*.)

In December 2003, Plaintiff had a conversation with Dunn in which Dunn stated he knew Plaintiff had "health problems" and wanted to know if Plaintiff "wanted to just go ahead and call it quits now."  (*Id*. at Exh. C, pg. 20.)  Plaintiff replied that he was "doing just fine."  (*Id*.)  Dunn then asked how many hours Plaintiff was "getting in," to which Plaintiff responded 30 or more per week.  (*Id*. at Exh. C, pg. 20, 31.)  Dunn did not ask about or mention Plaintiff's knees during this conversation.  (*Id*. at Exh. C, pg. 31.)  Plaintiff contends his "hours started to drop" after this conversation with Dunn, but admitted this is consistent with the "seasonal" nature of the work.  (*Id*. at Exh. C, pg. 20, 31.)

Plaintiff's employment with Defendant was terminated on January 19, 2004, with the stated reason as "layoff."  (*Id*. at ¶¶ 5, 7; Doc. 64, Exh. A-1.)  In the termination paperwork, Dunn indicated Plaintiff was "eligible for rehire."  (*Id*. at ¶ 8; Doc. 64, Exh. A-1, Exh. B, ¶ 5.)  At the time of Plaintiff's layoff, Dunn suggested that Plaintiff call the manager of Defendant's Coffeyville branch because Dunn thought they might be interested in hiring Plaintiff.  (*Id*. at ¶ 9; Doc. 64, Exh. B., ¶ 3.)  Dunn also offered to inquire with other companies in the

industry on behalf of Plaintiff.  (*Id*.)

Although Dunn had received the Work Activity Questionnaire from the SSA in December 2003 (*Id*. at ¶ 6; Doc. 66, at pg. 7 - 11), there is no evidence that he had knowledge of Plaintiff's knee problems at the time of Plaintiff's termination in January 2004.  (Doc. 64 at Exh. B, ¶ 4.)  As previously noted, the questionnaire and related documents did not reference any specific disability or medical condition concerning Plaintiff.  Furthermore, Plaintiff intentionally chose not to inform Defendant of his knee problems, any restrictions, or any discomfort in his knees he may have experienced during his employment.  (*Id*. at ¶¶ 19 -20, Exh. C, pg. 14.)  To the contrary, he intentionally chose not to inform Defendant because he believed if "[y]ou go to some company like that and tell them you have a disability, are they going to give you a chance to try to work? I don't believe so." (*Id*. at ¶ 20, Exh. C, pg. 37-38.)

During Plaintiff's employment, Defendant had in place an Equal Opportunity Policy stating that "[d]isabled employees will not be discriminated against because of their disability."  (*Id*. at Exh. A-2.)  The policy identifies Becky Buch ("Buch") as Defendant's Equal Opportunity Officer and instructs "[a]nyone who believes he or she has been discriminated against" to contact her "immediately."  (*Id*.)  Plaintiff never contacted Buch to complain that his

termination was discriminatory.  (*Id*. at ¶ 11.)

During Plaintiff's employment with Defendant, the condition in his knees did not prevent him from performing any of his job duties.  (*Id*. at Exh. C, pg. 9-10.)  To the contrary, he was able to perform all of his job tasks for Defendant, regardless of the condition of his knees.  (*Id*. at Exh. C, pg. 14.)

Plaintiff received disability benefits from the SSA continuously from 1997 until after his employment was terminated by Defendant in January 2004.  (*Id*. at ¶¶ 12, 26, Exh. C at pg. 53.) At some point after his lay off, the SSA suspended his benefits for a "couple of months."  (*Id*. at ¶ 26, Exh. C at pg. 54.)  The benefits were reinstated in March 2004 based on Plaintiff's previous representations to the agency regarding his condition; he did not submit new or revised paperwork, but simply made a telephone call to the agency.  (*Id*. at Exh. C, pg. 56.)

Defendant hired two employees in January 2004, within weeks of terminating Plaintiff's employment.  (Doc. 66, at ¶ 6.)

## DISCUSSION

**A.      Standards for Summary Judgment**.

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).  An

issue of fact is "material" if a dispute over that fact might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Under the standard set forth in Fed. R. Civ. P. 56(c), a "genuine issue for trial" exists if "a reasonable jury could return a verdict for the nonmoving party." *Id.*, 477 U.S. at 248, 106 S. Ct. at 2510. In other words, the Court must determine "whether there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.*, 477 U.S. at 250, 106 S. Ct. at 2511.

When reviewing the evidence, the Court must draw all reasonable inferences in favor of the nonmovant. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). Even so, to successfully oppose summary judgment, the nonmovant must bring forward more than a mere scintilla of evidence in support of its position. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). A nonmovant may not "create a genuine issue of material fact with unsupported, conclusory allegations." *Tapia v. City of Albuquerque*, 170 Fed.Appx. 529, 533 (10th Cir. 2006).

Although a *pro se* litigant's pleadings must be liberally construed, he, like

any other litigant, cannot withstand summary judgment simply by relying on allegations that are unsupported by evidence in the record.  ***Thomas v. Wichita Coca-Cola Bottling Co.***, 968 F.2d 1022, 1024 (10th Cir. 1992), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).  Further, the Court "is not plaintiff's advocate and it should not construct arguments or theories for him."  ***Hammad v. Bombardier Learjet, Inc.***, 192 F.Supp.2d 1222, 1229 (D. Kan. 2002) *citing* ***Hall v. Bellmon***, 935 F.2d 1106, 1110 (10th Cir. 1991).

A *pro se* plaintiff also is "held to the same rules of procedure governing other litigants."  ***Green v. Dorrell***, 969 F.2d 915, 917 (10th Cir. 1992); ***Ogden v. San Juan County***, 32 F.3d 452, 455 (10th Cir. 1994) (internal citation omitted).  Plaintiff, however, has virtually ignored the Federal Rules of Civil Procedure and District Court's local rules governing summary judgment.

Pursuant to the District of Kansas local rules, a memorandum in support of summary judgment

> shall begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists.  The facts shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.  **All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically converted by the statement of the opposing party**.

D. Kan. Rule 56.1(a) (emphasis added).  Defendant's memorandum in support of summary judgment complies with the local rule.  Defendant has set forth more than five pages of numbered paragraphs containing factual statements supported by citations to the record.  (Doc. 64, pg. 3 - 8.)

District Court of Kansas local rule 56.1(b) governs memoranda in opposition to summary judgment.  It states, in relevant part, that an opposing memorandum

> **shall** begin with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists.  Each fact in dispute **shall** be numbered by paragraph, **shall** refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, **shall** state the number of movant's fact that is disputed.

D. Kan. Rule 56.1(b) (emphasis added).

Even construing Plaintiff's response "liberally," the Court is hesitant to find that Plaintiff has appropriately controverted *any* of Defendant's factual assertions.  Plaintiff has failed to identify which of Defendant's facts he attempts to dispute.  Although Plaintiff has attached certain exhibits to his memoranda, he makes only general reference to two of the exhibits.  He refers to "attachment B" to support the allegation that Defendant was aware of Plaintiff's disability prior to the termination of his employment.  (Doc. 66, ¶ 5.)  He then refers to "Exhibit C" to support the allegation that Defendant hired two service technicians "the same month Plaintiff was terminated."  (Doc. 66, ¶ 6.)  Unfortunately for Plaintiff, as discussed below,

the exhibits do not adequately support the factual statements he attempts to make.

Plaintiff's disregard for the Court's local rules relating to summary judgment procedures, however, do not relieve this court of its obligation to determine whether Defendant has properly established its right to summary judgment pursuant to Fed.R.Civ.P. 56(c). *See e.g.*, **Reed v. Bennett,** 312 F.3d 1190, 1193 (10th Cir. 2002); **Sandifer v. Green,** 57 Fed.Appx. 857, 859 (10th Cir. 2003). Accordingly, the court will address Defendant's arguments on their substantive merits and will review the record to determine whether summary judgment is appropriate.

**B.     *Prima Facie* Case of Disability Discrimination Under the ADA.**

In order to survive summary judgment, Plaintiff must first establish a *prima facie* case of disability discrimination by demonstrating the following elements: (1) he is "disabled" under the ADA; (2) he is a "qualified individual with a disability," meaning that he is able to perform the essential functions of the job with or without reasonable accommodation; and (3) the employer terminated him because of his disability.  **Siemon v. AT&T Corp.**, 117 F.3d 1173, 1175 (10th Cir. 1997); **White v. York Int'l Corp.**, 45 F.3d 357, 360-61 (10th Cir. 1995); **Brown v. Unified School Dist. No. 500**, 368 F.Supp.2d 1250, 1255 (D.Kan. 2005).  Plaintiff must raise a

genuine issue of material fact as to each element.[2]  ***Morgan v. Hilti, Inc***., 108 F.3d 1319, 1323 (10th Cir. 1997).  If Plaintiff fails to do so as to any of the elements, he fails to establish a *prima facie* case and Defendant is entitled to summary judgment.  ***Randle v. City of Aurora***, 69 F.3d 441, 451 (10th Cir. 1995).

1.      **Disability**.

Plaintiff argues that his "disability regarding his knees is and was a true disability and was regarded as such by the Social Security Administration."  (Doc. 66 at ¶ 3.  He also contends that he "should not have to prove his disability as it qualifies for this court" as a result of the determination by the SSA.  (Doc. 70 at ¶ 2.)  Further, he contends that the purpose of these court proceedings are "not to establish if a disability does exist but if a violation of the disabilities act has occurred."  (*Id*.)  The Court acknowledges that the SSA has determined Plaintiff is disabled for the purposes of providing benefits from that agency.  Contrary to Plaintiff's belief, however, he is required to prove that his disability "qualifies" under the ADA before the Court will address whether he has been discriminated

---

[2]  The Court will, for the purposes of this motion, assume Plaintiff was a "qualified individual."  The parties have stipulated that he was able to perform all of his job tasks and functions.  (*See* Doc. 59, at ¶ 4(a)(4).)  It is, therefore, unnecessary for the Court to address Defendant's discussion of the contradiction between Plaintiff's representations to the SSA and his arguments in opposition to summary judgment.  (*See* Doc. 64, at pg. 13-15.)  Thus, the Court will discuss only whether Plaintiff has created a genuine issue of material fact as to whether he was disabled and whether he was terminated because of that disability.

against.

Various federal courts have acknowledged that the term "disability" is defined differently under the ADA than it is under the Social Security Act. *Griffith v. Wal-Mart Stores, Inc.*, 135 F.3d 376, 383 (6th Cir. 1998) (holding that definitions of two statutes differ "materially"), *cert. denied*, 526 U.S. 1144, 119 S.Ct. 2018, 143 L.Ed.2d 1030 (1999); *Weigel v. Target Stores*, 122 F.3d 461, 468 (7th Cir. 1997) (holding that definitions differ "materially"); *Mitchell v. Washingtonville Cent. School Dist*., 992 F.Supp. 395 (S.D.N.Y. 1998).  Because Plaintiff's claims before the Court arise under the ADA, the Court is concerned only with definitions under that act.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. §12112(a).  The Act defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. 12102(2).

A "major life activity" is a "basic activity that the average person in the

14

general population can perform with little or no difficulty." ***Mondaine v.***

***American Drug Stores, Inc***., 408 F.Supp.2d 1169, 1199 (D. Kan. 2006) (internal

citation omitted).  "Substantially limited" is defined as "either the inability to

perform a major life activity, or a severe restriction on the ability to perform a

major life activity as compared to the general population." ***Dutton v. Johnson***

***County Bd. of Comm'rs***, 859 F.Supp. 498, 505 (D. Kan. 1994).

    As mentioned above, Plaintiff's claimed physical impairment is "knee

problems."  (Doc. 64, Exh. C, pg. 9.)  He has not, however, established or even

addressed how these knee problems substantially limited one or more major life

activities during his employment with Defendant.  He has not even specifically

identified which major life activities were to have been affected.  Although the

Court is not to "construct arguments or theories" for Plaintiff, ***Hammad***, 192

F.Supp.2d at 1229, it is reasonable to infer from his memorandum that he contends

the major life activities of work and movement were substantially limited by his

knees.  (Doc. 66, ¶¶ 1 - 2.)

    Although "work" is considered a major life activity, a plaintiff must

establish that he is  "unable to work in a broad class of jobs," rather than a

particular job. ***Sutton v. United Air Lines, Inc.***, 527 U.S. 471, 491, 119 S.Ct.

2139, 144 L.Ed.2d 450 (1999).  Unfortunately for Plaintiff, the evidence

establishes that he was not substantially limited in his ability to work at the time in question.  Plaintiff unequivocally testified that he was able to perform all of his job-related tasks, regardless of the condition of his knees.  (Doc. 64, Exh. C, pg. 14.)  This is supported by the parties' stipulation in the Pretrial Order.  (Doc. 59, ¶ 4(a)(4)).  In addition, Plaintiff agreed that there was nothing about his knees that prevented him from performing his work responsibilities as a service technician for Defendant.[3]  (*Id*., Exh. C, pg. 9-10.)  Thus, the record clearly establishes that Plaintiff was not substantially limited in the major life activity of work.

District courts in the Tenth Circuit have recognized that certain categories of movement can constitute "major life activities."  For instance, ***Pearson v. City of Manhattan*** held that walking is a major life activity.  33 F.Supp.2d 1306, 1312 (D. Kan. 1999) (so holding in context of double amputee who was substantially limited in ability to walk).  *See also,* ***Thalos v. Dillon Companies, Inc***., 86 F.Supp.2d 1079, 1084 (D. Colo. 2000) (holding individual with cerebral palsy who walked with a "scissors" gait and needed hand rail to go down stairs was not substantially limited in major life activity of walking).  In ***Mondaine***, a Court from this District

---

[3]  Because Plaintiff never notified Defendant of his knee problems or any physical restrictions that limited his ability to work, (Doc. 59, ¶ 4(a)(17)), it follows that Defendant could not have provided reasonable accommodation to assist Plaintiff in performing his job duties.  Therefore, he performed the job duties without accommodation.  Clearly, he was not "substantially limited" in the major life activity of work.

held that walking, performing manual tasks, sitting, standing, lifting, and reaching are all considered major life activities.  408 F.Supp.2d at 1199.

Plaintiff's SSA forms contain his hand-written statement that, as of November 1997, he could not bend, squat, climb ladders, walk "very far," sit for long periods, or carry weight.  (Doc. 64, Exh. D-2, filed under seal.)  Even assuming this to be true, Plaintiff did not go to work for Defendant until almost five and a half years after he submitted that document to the SSA.  He presented no admissible evidence to the Court that he had these or other limitations while employed by Defendant.[4]

Defendant has supplied an affidavit of its Human Resources Director, Becky Buch, who specifically declared that these tasks were required "on a daily basis."[5] (Doc. 64, Exh. A, ¶ 3.)  Conversely, Plaintiff contends that, as a service technician, he "was not required to climb ladders or lift heavy objects on a daily basis."  (Doc. 66 at ¶ 2.)  He also contends that the job "did not require him to walk long

_____

[4] Plaintiff currently cannot squat or "do lots of climbing."  (*Id.*, Exh. C, pg. 13.)  He has, however, had two knee replacement surgeries since his employment with Defendant was terminated in January 2004.  (*Id.*, Exh. C, pg. 13.)  These intervening surgeries make any evidence of Plaintiff's current condition and/or restrictions irrelevant to a discussion of his physical abilities while employed by Defendant.

[5] Not only are the service technician job duties supported by a sworn affidavit from Defendant's Human Resources Director (Doc. 64, Exh. A), common sense dictates that servicing residential and commercial heating and air conditioning systems would require a certain amount of bending, lifting, squatting, climbing, walking, etc. on a regular basis.

distances nor bend, squat, or kneel for long periods of time." (*Id*.)  Because

Plaintiff makes no reference to the record, an exhibit, or an affidavit to support this

contention, the Court finds it to be nothing more than an unsupported conclusory

allegation.  *Tapia*, 170 Fed.Appx. at 533.  Therefore, there is no evidence that

Plaintiff was substantially limited in performing these movements during his

employment with Defendant.  *Id*.

Plaintiff also contends he had a "record" of being disabled.[6]  (Doc. 66, at ¶¶

5, 7.)  "A record of such impairment" is defined by the ADA regulations as "a

history of, or has been misclassified as having, a mental or physical impairment

that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k).

"This provision is intended to address discrimination that occurs because of an

individual's history of a disability or because of an individual's misclassification as

disabled."  *Dotson v. Electro-Wire Products, Inc.*, 890 F.Supp. 982, 990 (D. Kan.

1995).  The regulation provides, however, that

_____

[6]  Defendant argues that Plaintiff has advanced a "new theory" of recovery by
contending he has "record of impairment."  (Doc. 69 at 6.)  Defendant contends Plaintiff
failed to plead "record of impairment" in his Complaint (Doc. 1) and in the Pretrial Order
(Doc. 59.)  Plaintiff's Complaint contains allegations of discrimination based upon his
"disability or perceived disability, which is a history of knee problems since 1996." (Doc.
1 at 2.)  While this language does not specifically identify a "record of impairment,"
construing the *pro se* plaintiff's Complaint liberally, the Court will consider for purposes of
this motion for summary judgment that Plaintiff's complaint of discrimination based on
disability encompasses any and all of the potential definitions of the that term.  42 U.S.C. §
12102(2).

> The fact that an individual has a record of being a
> disabled veteran, or of disability retirement, or is
> classified as disabled for other purposes does not
> guarantee that the individual will satisfy the definition of
> 'disability' under part 1630 [of the ADA].  Other statutes,
> regulations and programs may have a definition of
> 'disability' that is not the same as the definition set forth
> in the ADA and contained in part 1630.

29 C.F.R. app. 1630.2(k) (2006).   Thus, Plaintiff cannot simply rely on the fact

that he received benefits from the SSA to establish a record of disability.  Rather,

the "record" at issue must demonstrate the individual's ability to perform a major

life activity has been substantially limited.  ***Dotson***, 890 F.Supp. at 990.

Further, as previously discussed, there is no evidence that Defendant was

exposed to any SSA documents mentioning Plaintiff's knee problems prior to the

termination of his employment.  The only SSA documents Dunn saw prior to

Plaintiff's termination contain no reference to an alleged disability or specific

medical condition from which Plaintiff suffered.  (*See* Doc. 59, at ¶¶ 9, 17; Doc.

64, Exh. C, pg. 31, 37-38.)  Therefore, even if Plaintiff had a record of being

disabled, the Court is at a loss to see the relevance of such a record if Defendant

had no knowledge of it.  *See **Couts v. Beaulieu Group, LLC***, 288 F.Supp.2d 1292

(N.D. Ga. 2003) (holding that a plaintiff failed to show a "record" of disability

when the person who decided to terminate his employment had no awareness of

any such record).

Plaintiff cannot establish that he was disabled, that he had a record thereof, or that Defendant regarded him as disabled.  He, therefore, cannot establish his *prima facie* case of discrimination and summary judgment is appropriate.

### 2.    **Plaintiff's termination**.

Even if Plaintiff were able to demonstrate that he was disabled at the time in question, he fails to establish that he was terminated because of the disability. Plaintiff contends that Defendant became aware of his disability approximately a month prior to the termination of his employment as a result of correspondence Defendant received from the SSA.  (Doc. 66, ¶ 5.)  Plaintiff argues that Dunn "had to know this [correspondence] related to a disability . . ." (*Id*.)  Again, Plaintiff attempts to support his argument with a conclusory allegation unsupported by the factual record.  ***Tapia***, 170 Fed.Appx. at 533.  The Court gives no evidentiary weight to Plaintiff's assumption as to what Dunn "had to know" at the time of his termination.

"The court may, *but is not obligated to,* search for and consider evidence in the record that would rebut the defendant's evidence, but that plaintiff has failed to cite." ***Hammad***, 192 F.Supp.2d at 1227 (internal citation omitted).  A thorough inspection of the documents at issue from the SSA, which Plaintiff attaches to his

brief without specific citation thereto, shows not a single reference to Plaintiff's condition or disability, either generally or specifically.  (*Id*. at pg. 5 - 11.)  As such, the Court cannot conclude that Dunn "had to know" about Plaintiff's condition prior to his termination.  Further, the Pretrial Order entered in this case clearly stipulates that "[a]t the time Dunn received and completed the Social Security Administration's questionnaire, he did not know about Plaintiff's knee problems." (Doc. 59, at pg. 4.)

Plaintiff has presented no evidence to demonstrate that Defendant was aware of his disability at the time his employment was terminated.  Thus, the Court finds that Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Plaintiff was fired because of his disability.  Plaintiff cannot establish the elements of his *prima facie* case of discrimination and summary judgment is mandated.

## C.    **Pretext**.

Plaintiff's failure to establish a *prima facie* case of disability discrimination, discussed above, mandates the entry of summary judgment.  The analysis need go no further.  The Court feels compelled, however, to discuss the issue of pretext because Plaintiff seemingly raised it in his memorandum in opposition.  (Doc. 66, at ¶ 6.)

After a plaintiff establishes a *prima facie* case of disability discrimination, the burden shifts to the defendant to offer a legitimate, nondiscriminatory reason for its employment decision. ***Henry v. Unified School Dist. #503***, 328 F.Supp.2d 1130, 1157 (D. Kan. 2004) (citing ***Randle v. City of Aurora*** , 69 F.3d 441, 451 (10th Cir. 1995)). Once the defendant presents a nondiscriminatory reason for its decision, the burden shifts back to the plaintiff to show "a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e., unworthy of belief." *Id*. Evidence of pretext, therefore, is not relevant until a plaintiff establishes his *prima facie* case.

As discussed above, Plaintiff has failed to meet his *prima facie* burden. Recognizing this, Defendant did not, and was not required to, proffer a legitimate, nondiscriminatory reason for Plaintiff's termination. Even so, Plaintiff argues the reason Defendant provided for his January 2004 termination is pretextual. Plaintiff contends he was terminated for "lack of work," but that two individuals (Mark Gates and Renae Osburn) were hired later that same month by Defendant. (*Id*.) In support of this factual assertion, Plaintiff has submitted a partial listing of Defendant's employees, presumably received from Defendant during discovery, which includes Gates and Osburn and their dates of hire. (Doc. 66, Exh. C.)

The documentation supplied by Plaintiff does not, however, indicate the

positions into which Gates and Osburn were hired.  In other words, there is no

evidence that these two individuals were hired by Defendant as service technicians.

The exhibit provided by Plaintiff is entitled "Comfort Systems Craft Employees."

(*Id*.)  The Court will not rely on Plaintiff's unsupported and conclusory allegation

as to which position(s) Gates and Osburn held for Defendant.[7]

Any additional argument Plaintiff could advance that the reason for his

layoff was pretextual is weakened by his testimony that the downturn in his work

hours in the month preceding his termination was consistent with the seasonal

nature of heating and air conditioning service.  (Doc. 64, at Exh. C, pg. 20, 31.)

Therefore, even assuming Plaintiff had established his *prima facie* case, he has not

provided the Court with evidence of pretext.

## CONCLUSION

The court finds that Defendant has met its burden under Fed.R.Civ.P. 56(c)

of showing that there is no genuine issue as to any material fact and that Defendant

is entitled to a judgment as a matter of law.  Plaintiff has failed to come forward

---

[7]  In response to a prior motion to compel (Doc. 44) filed by Plaintiff, Defendant submitted an exhibit under seal (Doc. 54) listing the service technicians employed by Defendant, as well as their hours of work per day, from January 2003 through December 2005.  Neither Gates nor Osburn are listed as service technicians for this two-year period. Further, according to the exhibit, no other service technician began working for Defendant until May 5, 2004.  A second service technician did not begin working until December 1, 2004.

with specific facts showing that there is a genuine issue for trial regarding whether he was disabled and whether Defendant terminated his employment as a result of a disability.  *See* Fed.R.Civ.P. 56(e).

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment (Doc. 63) is GRANTED.

Dated at Wichita, Kansas, on this 26th day of October, 2006.


  s/   Donald W. Bostwick
DONALD W. BOSTWICK
United States Magistrate Judge